**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Gregory Martinez, Sr., etc.; et al, | ) | No. CV-12-1837-PHX-LOA |
| | ) | |
| Plaintiffs, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| City of Avondale, etc; et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

On November 1, 2013, Defendants filed a Motion for Summary Judgment. (Doc. 143) Thereafter, Plaintiffs filed a Response in opposition to the Motion and Defendants filed a Reply. (Docs. 149, 152) All parties have consented to magistrate-judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Docs. 7-8)

**I. Background**

Because of the parties' familiarity with the facts surrounding this most unfortunate shooting and the various versions of those facts provided by the parties and witnesses, the Court will not repeat them except as may be necessary to rule on the Motion.

This is a fatal police shooting lawsuit that arises out of a 9-1-1 call to the Avondale Police Department on October 28, 2011 by Plaintiff Marisol Martinez, requesting police assistance with her 20-year old son, Gregory Martinez, Jr., now deceased. Plaintiffs are the decedent's parents, his three minor siblings (I.M.,[1] M.M., and L.M.), and the Estate of

---

[1] When this action was removed to this District Court, Isaiah Martinez was a minor. Because he is now an adult, the Court will use his full name in this Order and counsel are

1   Gregory Martinez, Jr., by and through its personal representative, Gregory Martinez, Sr., the

2   decedent's father. The Second Amended Complaint names as defendants the City of

3   Avondale ("City"), Officer Kevin Sapp, and seven other Avondale police officers[2] who

4   allegedly unreasonably detained the decedent's family members after the shooting.

5       Plaintiff Marisol Martinez called 9-1-1 after her son had become violent within the

6   family home. Mrs. Martinez communicated to the 9-1-1 operator that her son was "on

7   something," had "just punched the wall," but he "didn't hit anybody." (Doc. 144,

8   Defendants' Statement of Facts ("DSOF"), ¶ 6, Deposition of Gregory Martinez, Sr., Exhibit

9   ("Exh.") 5 at 22) Officer Sapp was the first police officer to respond to the emergency call

10  of a domestic disturbance. (*Id.*, ¶ 7) Officer Sapp's mother, Terry Sapp, was a ride-along

11  passenger in Officer Sapp's patrol vehicle when he responded to the call. (*Id.*)

12      The parties agree that the decedent was holding two kitchen knives when Officer Sapp

13  arrived at the Martinez residence and encountered the decedent outside the residence on the

14  public street, but they disagree on what the decedent did immediately thereafter until the

15  shooting. According to Plaintiffs, the decedent walked around a pickup truck parked in the

16  street, "moving really slow" and "dragging his feet," in the general direction of Officer

17  Sapp's patrol car stopped across from the parked truck. (PSOF, at 5, Exh. 8, Deposition of

18  Sharon Nunez at p. 32.1; *see* diagrams in PSOF at 3-4) As Officer Sapp exited his vehicle,

19  he drew his firearm from its holster, and moved south on 117th Drive, into the middle of the

20  street away from his patrol car. (*Id.,* Exh. 4 Jesse Wobrock Report; Exh. 9, Deposition of

21  Kevin Sapp at pp. 87-89) Officer Sapp and eyewitnesses report varying distances between

22  Officer Sapp and the decedent, ranging from 10 to 30 feet, at the time of the shooting. (*Id.*

23

24  _____

25  are hereby authorized to refer to him by his full name, and not his initials, in future public
    filings. Counsel must continue to use of the two other minor children's initials in all public

26  filings to protect their privacy interests. *See* Rule 5.2(a), Fed.R.Civ.P.

27      [2] Specifically, these defendants are: Officers Albert Bates, Robert Clement,
    Christopher Beckett, Reginald Sayles, Michael Unger, Edward Toxqui, and Raymond

28  Harris.

¶ 12 at 9)  In addition to Gregory Martinez, Sr., and possibly Mrs. Martinez, Officer Sapp twice shouted at the decedent to drop the knives, but he never dropped the knives to the ground before he was shot. (*Id.*, ¶ 10; DSOF, ¶ 10)  Officer Sapp also yelled "show me your hands," and the decedent puts his hands up with the knives in them. He was not holding the knives in a combative manner nor was he charging or advancing upon Officer Sapp when he was shot. Witnesses indicate the decedent was holding the knives in the air over his head, with the tips pointed upward, and then he lowered them to his waist. (*Id.*, ¶ 9, Exh. 6, Deposition of Marisol Martinez at p. 22)  A few seconds later, while the decedent was not moving at all, Officer Sapp shot the decedent twice.[3] (*Id.* at 7, Exh.10, Deposition of Isaiah Martinez, at pp. 53-54; ¶ 11, Exh. 6, Deposition of Marisol Martinez at p. 26) Gregory Martinez, Jr. was transported by helicopter to St. Joseph's Hospital, where he was pronounced dead. (DSOF, ¶ 14)

No evidence has been presented that Officer Sapp warned the decedent that if the decedent did not drop the knives immediately or if he came any closer, Officer Sapp would shoot him. In addition to his firearm, Officer Sapp possessed other non-deadly weapons on him at the time of the shooting, including a Taser, baton, and OC (pepper) spray. (*Id.*, ¶ 35, Exh. 20, Roger Clark Report at p. 4; Exh. 9, Deposition of Officer Sapp at p. 54) None of the Taser's capabilities are presented by the parties.

Defendants seek summary judgment on Plaintiffs' 42 U.S.C. § 1983 and false arrest claims, as alleged in the Second Amended Complaint, that

1) Defendant Officer Kevin Sapp used excessive force when he shot and killed the decedent in violation of the Plaintiffs' Fourth Amendment right to be free from the use of unreasonable force (Count 4[4]);

---

[3] Defendants contend the facts are that Gregory Martinez, Jr. ignored all commands to drop the two large kitchen knives and continued to advance upon Officer Sapp with the knives drawn. When he was 10 to 15 feet away from Officer Sapp, Officer Sapp discharged his duty weapon two times, killing him. (DSOF, ¶¶ 8, 11-12)

[4] Contrary to their arguments in the Response, Plaintiffs' Second Amended Complaint has mixed their § 1983 claims in Counts 4 and 5, adding confusion to these allegations. The

2) the Defendant City of Avondale ("City") and several Defendant police officers wrongfully seized the Plaintiffs after the shooting in violation of Plaintiffs' Fourth Amendment right to protection against unreasonable seizures and Fourteenth Amendment right to procedural and substantive due process of law (Count 5);

3) assuming *arguendo* violations of Plaintiffs' constitutional rights, Defendants are entitled to qualified immunity for Officer Sapp's use of excessive force. Defendants, however, do not raise the issue of qualified immunity in the Motion for Summary Judgment regarding Plaintiffs' § 1983 cause of action for unreasonable seizures of the Plaintiffs after the shooting; and

4) on Plaintiffs' false arrest claim, Defendants unlawfully and unreasonably detained, falsely arrested, or imprisoned the Plaintiffs after the shooting in violation of Arizona law (Count 3).

**II. Summary Judgment**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied his burden, he is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); see also Rule 56, Fed.R.Civ.P. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III. Fourth Amendment - Excessive Force - Claim (Count 4)**

After considering the parties' briefings, statements of facts, written arguments of

_____

Court will construe Counts 4 and 5 in the Second Amended Complaint as Plaintiffs do in the Response. *See* doc. 149 at 5.

counsel, admissible evidence, and viewing the facts, as the Court must, in the light most favorable to the non-moving parties, the Court will deny the Motion as to Count 4. The Court concludes that there are genuine disputes of material fact that require jury resolution.

"Whether the use of deadly force is reasonable is highly fact-specific, . . . but the inquiry is an objective one[.]" *Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010) (quoting, *inter alia*, *Graham v. Connor*, 490 U.S. 386, 397 (1989) (internal quotation marks omitted); *see also Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (*en banc*) ("Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment . . . in excessive force cases should be granted sparingly." ).

The Court finds Plaintiffs have made a sufficient factual showing to create a question of fact whether Officer Sapp's use of deadly force was unreasonable under the circumstances. *See, e.g., Hayes v. County of San Diego*, 736 F.3d 1223, 1232-1233 (9th Cir. 2013) (Among the *Graham* factors to consider, "[t]he central issue is whether it was objectively reasonable under the circumstances for the deputies to believe that [the decedent] posed an immediate threat to their safety, warranting the immediate use of deadly force, rather than less severe alternatives - such as an order to stop, an order to drop the knife, or a warning that deadly force would be used if [the decedent] came any closer to the deputies.") (footnote omitted) (citing, *inter alia*, *Graham*, 490 U.S. at 396-397; *Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997) ("Law enforcement officers may not shoot to kill unless, at a minimum, the suspect presents an *immediate* threat to the officer or others, . . . .") (emphasis added); *Smith*, 394 F.3d at 702 (noting that the second factor under *Graham* - whether the suspect poses an immediate threat to the safety of the officers or others - is the "most important") (quoting *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994)).

**IV. Post-Shooting Fourth and Fourteenth Amendment Claims (Count 5)**

"[P]arents have a Fourteenth Amendment liberty interest in the companionship and society of their children." *Wilkinson*, 610 F.3d at 554 (citing *Curnow ex rel. Curnow v.*

- 5 -

1   *Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991)). No such liberty interest, however, has

2   been recognized for brothers and sisters in the Ninth Circuit or established by the Supreme

3   Court. *See Ostling v. City of Bainbridge Island*, 872 F.Supp.2d 1117, 1127 (W.D. Wash.

4   2012) (citing *Ward v. City of San Jose*, 967 F.2d 280, 284 (9th Cir. 1992) ("Neither the

5   legislative history nor Supreme Court precedent supports an interest for siblings consonant

6   with that recognized for parents and children.") (affirming dismissal of siblings' substantive

7   due process claim). "Official conduct that 'shocks the conscience' in depriving parents of

8   that interest is cognizable as a violation of due process." *Wilkinson*, 610 F.3d at 554 (citing

9   *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). "In determining whether excessive

10  force shocks the conscience, the court must first ask 'whether the circumstances are such that

11  actual deliberation [by the officer] is practical.'" *Id*. (quoting *Porter*, 546 F.3d at 1137;

12  *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir. 1998) (internal

13  quotation marks omitted)). "Where actual deliberation is practical, then an officer's

14  'deliberate indifference' may suffice to shock the conscience." *Id*. "On the other hand, where

15  a law enforcement officer makes a snap judgment because of an escalating situation, his

16  conduct may only be found to shock the conscience if he acts with a purpose to harm

17  unrelated to legitimate law enforcement objectives." *Id*. (citing *Porter*, 546 F.3d at 1140).

18       The Supreme Court has also stated that, because it has "always been reluctant to

19  expand the concept of substantive due process" under the Fourteenth Amendment, where a

20  particular "Amendment provides an explicit textual source of constitutional protection

21  against a particular sort of government behavior, that Amendment, not the more generalized

22  notion of substantive due process" must be the guide for analyzing such claims. *Pryor v. City

23  of Clearlake*, 877 F.Supp.2d 929, 949 (N.D. Cal. 2012) (quoting *County of Sacramento v.

24  Lewis*, 523 U.S. 833, 842 (1998)). Additionally, the Ninth Circuit has indicated, "It is

25  reversible error to give a substantive due process instruction in an excessive force case after

26  *Graham*." *Ward*, 967 F.2d at 284.

27       For the reasons that Plaintiffs have failed to raise a question of fact that Officer Sapp's

28  conduct shocks the conscience of a reasonable juror or acted with the purpose to harm the

1    decedent for reasons unrelated to legitimate law enforcement objectives; Plaintiffs' § 1983
2    claims under the Fourth Amendment adequately address Plaintiffs' claims for excessive use
3    of force in fatally shooting the decedent and Plaintiffs' unreasonable detention post-shooting;
4    and the decedent's siblings clearly have no Fourteenth Amendment protected liberty interest
5    in the companionship of their brother, the Court will grant summary judgment on Plaintiffs'
6    Fourteenth Amendment due process claims. Issues of fact for jury resolution, however, exist
7    on Plaintiffs' Fourth Amendment claims that the Defendant City and other Defendant police
8    officers wrongfully seized the Plaintiffs after the shooting.

9    **V. Qualified Immunity**

10           Qualified immunity "shields an officer from suit when [he] makes a decision that,
11   even if constitutionally deficient, reasonably misapprehends the law governing the
12   circumstances [he] confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The
13   Supreme Court has endorsed a two-part test to resolve claims of qualified immunity: a court
14   must decide (1) whether the facts that a plaintiff has alleged "make out a violation of a
15   constitutional right," and (2) whether the "right at issue was 'clearly established' at the time
16   of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).
17   Because "it is inevitable that law enforcement officials will in some cases reasonably but
18   mistakenly conclude that probable cause [to arrest] is present [or they may lawfully detain
19   persons clearly not involved in criminal conduct]," qualified immunity protects officials
20   "who act in ways they reasonably believe to be lawful." *Garcia v. County of Merced*, 639
21   F.3d 1206, 1208 (9th Cir. 2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

22           The Court finds that Plaintiffs' Fourth Amendment right to be free from unreasonable
23   seizures was sufficiently established by October 2011, that a reasonable police officer would
24   have had fair notice that the deadly force employed by Officer Sapp under the circumstances
25   presented by Plaintiffs was unlawful. *See Nelson v. City of Davis*, 685 F.3d 867 (9th Cir.
26   2012) (finding the district court did not err when it denied the officers qualified immunity
27   for their use of force against Nelson.); *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir.
28   2004) ("In excessive force cases, the inquiry remains whether, under the circumstances, a

1   reasonable officer would have had fair notice that the force employed was unlawful, and

2   [whether] any mistake to the contrary would have been unreasonable.") (alteration in

3   original; citation and internal quotation marks omitted).

4        While they pled qualified immunity as an affirmative defense in their Second

5   Amended Answer, doc. 95, ¶ 78 at 12, Defendants did not raise the issue of qualified

6   immunity in the Motion for Summary Judgment regarding Plaintiffs' § 1983 cause of action

7   for the alleged unreasonable seizures of the Plaintiffs after the shooting. In the interests of

8   justice and because qualified immunity seeks to avoid making police officers defendants in

9   lawsuits based on their official actions, the Court will address it here *sua sponte*. *See Harlow*

10  *v. Fitzgerald*, 457 U.S. 800, 814 (1982); *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)

11  (qualified immunity protects "all but the plainly incompetent or those who knowingly violate

12  the law"). Because a district court has an interest in preventing repetitive litigation, it may

13  raise qualified immunity *sua sponte* even though it was not raised in the Defendants'

14  summary judgment motion on Plaintiffs' post-shooting § 1983 detention claim. *See Walls*

15  *v. Schriro*, 2008 WL 2463671, at *12 (D. Ariz. June 16, 2008) (citing *Graves v. City of*

16  *Coeur D'Alene*, 339 F.3d 828, 845-46 n. 23 (9th Cir. 2003) (addressing qualified immunity

17  issue *sua sponte* because the defendants asserted the defense in their answer), *abrogated on*

18  *other grounds by U.S. v. Lopez*, 482 F.3d 1067 (9th Cir. 2007); *Sonoda v. Cabrera*, 255 F.3d

19  1035, 1040 n. 2 (9th Cir. 2001) (reviewing a district court's *sua sponte* grant of qualified

20  immunity where the defendants raised a qualified immunity defense in their answer).

21       The Court finds that Plaintiffs have presented sufficient evidence to create a question

22  of fact for jury resolution that, based on the totality of the objective circumstances, Plaintiffs

23  were unreasonably seized and detained after the shooting in violation of the Fourth

24  Amendment and qualified immunity does not apply. While Plaintiffs were not placed in

25  handcuffs or other physical restraints and there is no evidence the officers used physical

26  force, sufficient evidence has been presented that reasonable persons under Plaintiffs'

27  circumstances would believe that they were not free to leave the residence. The Supreme

28  Court has established that "[a]n arrest requires *either* physical force . . . *or*, where that is

absent, *submission* to the assertion of authority." *California v. Hodari D.*, 499 U.S. 621, 626 (1991) (emphasis in original). "A seizure results in a constitutional violation only if it is unreasonable." *Nelson*, 685 F.3d at 878. (citation omitted).

"The standard for determining whether a person is under arrest is not simply whether a person believes that he is free to leave, . . . but rather whether a reasonable person would believe that he is being subjected to more than the temporary detention . . . Thus, whether an individual is in custody depends upon the objective circumstances of the situation, [including the extent to which liberty of movement is curtailed and the type of force or authority employed] or whether a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave." *United States v. Bravo*, 295 F.3d 1002, 1009 (9th Cir. 2002) (citations and internal quotation marks omitted); *see also Hodari D.*, 499 U.S. at 627-28. Once an encounter rises to a level such that an individual does not feel free to leave, it becomes a "seizure," and the investigating officer must therefore have reasonable suspicion to justify his actions. *United States v. Ayarza*, 874 F.2d 647, 650 (9th Cir. 1989).

Plaintiffs have presented the following evidence in opposition to the summary judgment motion. Shortly after the shooting, additional Avondale police officers arrived at the Plaintiffs' home. (Doc. 149 at 4) The officers immediately separated the decedent's family members, and took away their cell phones. (Doc. 150, Plaintiffs Statement of Facts ("PSOF")   at ¶¶ 15-16) The Martinez family members, including the children, were prohibited from speaking to and comforting each other during their separation and from leaving their residence and traveling to the hospital to see their son and brother (according to Plaintiffs, his death was unknown to the Plaintiffs for many hours after the shooting). (*Id.* at ¶16 at 13-14, Exh. 12, Deposition of M.M. at pp. 32-33; ¶ 19 at 16,  Exh. 10, Deposition of Isaiah Martinez at p. 47)  Isaiah Martinez testified that if any of them even spoke to another Martinez family member, "they'd arrest us." (*Id.* at ¶ 19 at 16, Exh. 10, Deposition of Isaiah Martinez at p. 47)  After the police officers separated the Martinez children from their parents, M.M., age 15 at the time, wanted to comfort her mother, but an Avondale

1   police officer prohibited her from doing so. ("[t]hey just separated us all, and I was just
2   trying to run to my – to my mom. She was next to me. They kept pushing me back. And I
3   wanted – she was crying.") (*Id*. at ¶ 45) Mr. Martinez asked an Avondale police officer if he
4   could hold his children, but his request was denied. The officers took physical custody of the
5   family's cell phones. (*Id*. at ¶ 16)  The decedent's mother requested her cell phone be
6   returned, so she could call the family's pastor, which was denied. (*Id.* at ¶ 16 at 12, Exh. 6,
7   Deposition of Marisol Martinez , at p. 54)  Later, she convinced a police officer to call the
8   family's pastor on Mrs. Martinez's behalf, which he did. (*Id.*, Exh. 14, Supplemental Report
9   of Officer Unger at p. 000818)  Marisol Martinez's request to use the bathroom was denied.
10  (While Officer Unger was guarding Mrs. Martinez – at approximately 7:00 p.m., over three
11  hours after the shooting – she asked to use the bathroom, but she was told she could not use
12  the restroom at that time.) (*Id*. at 11, Transcript of Officer Unger Recording, Exh. 26, at p.
13  26)

14         As the evening progressed, the officers ordered pizza and Gatorade for themselves,
15  but did not offer any to the family until after the officers had eaten. (*Id*. at ¶ 15 at 10,  Exh.
16  5, Deposition of Gregory Martinez, Sr. at p. 85) Isaiah Martinez does not recall ever being
17  offered any food, water, or anything to drink. (*Id.,* Exh. 10 at pp. 48-49) The Plaintiffs and
18  other witnesses were treated substantially different. Unlike the Plaintiffs, Officer Sapp and
19  his mother, who was a witness to the shooting, were permitted to sit in a police car together
20  and were taken to a police station so that they could be together. (*Id*. at ¶¶ 43-44, 46)  When
21  Officer Sapp's mother asked to call her husband, the Avondale police officers immediately
22  provided her with a phone. (*Id.*, Exh. 15, Deposition of Terry Sapp at p. 29)

23         The Plaintiffs' inability to leave their residence or the shooting scene as they wished
24  lasted for seven hours, from the time of the shooting at approximately 4:00 p.m. until the
25  conclusion of Mr. Martinez's interview at a Goodyear police facility that night
26  (approximately 11:00 p.m.). (*Id*. at ¶ 17) According to Isaiah Martinez, the police didn't let
27  us talk to each other for about eight, nine hours separated." (*Id*. at ¶ 16 at p. 14, Deposition
28  of Isaiah Martinez, Exh. 10, at p. 19)

Additionally, by October 2011, a reasonable police officer would have also known that detaining Plaintiffs as mere witnesses after the shootings for an unreasonable period of time and under the circumstances presented by Plaintiffs without probable cause or even reasonable suspicion that Plaintiffs had engaged in criminal conduct was unlawful. *Anderson*, 483 U.S. at 640 (To be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."); *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (there is no requirement that "the very action in question [have] previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.") (citation omitted); *United States v. Ward*, 488 F.2d 162, 169-70 (9th Cir. 1973) (*en banc*) (finding as unreasonable seizure and a Fourth Amendment violation for FBI to conduct a *Terry* stop in a non-emergency to question witness, not suspected of criminal activity, about a third person regarding an investigation that was several months old); *Walker v. City of Orem*, 451 F.3d 1139 (10th Cir. 2006) (finding qualified immunity applicable to police officers who detained decedent's family members in their home for questioning who did not consent to their detention, which lasted approximately one and one-half hours and prevented them from being with the decedent before he died. The 10th Circuit's ruling was issued and published *more than 5 years* before the subject shooting and subsequent detention of Plaintiffs).

## VI. False Arrest or Imprisonment (Count 3)

Under Arizona law, the intentional torts of false arrest and false imprisonment differ only in terminology and are defined as "the detention of a person without his consent and without lawful authority." *Slade v. City of Phoenix*, 112 Ariz. 298, 300, 541 P.2d 550, 552 (Ariz. 1975) (citation omitted); *see also Al-Asadi v. City of Phoenix*, 2010 WL 3419728, at *3 (D. Ariz. Aug. 27, 2010). "The essential element necessary to constitute either false arrest or false imprisonment is unlawful detention." *Id.*, 112 Ariz. at 300, 541 P.2d at 552. "Further, false arrest or imprisonment does not require physical detention - the tort may be committed by intimidation." *Gortarez v. Smitty's Super Valu, Inc.*, 140 Ariz. 97, 101 n.2, 680 P.2d 807, 811 n.2 (Ariz. 1984) (citing W. Prosser, *Law of Torts* § 11, at 42-43 (4th ed.

1971) (finding trial court erred in directing a verdict for defendants on false arrest and imprisonment counts alleged against a shopkeeper brought by a customer suspected of shoplifting as issues whether the detention was carried out in a reasonable manner and for a reasonable length of time were for the jury). "To prove a false imprisonment claim, a plaintiff must allege and prove: '(1) the defendant acted with intent to confine another person within boundaries fixed by the defendant; (2) the defendant's act resulted in such confinement, either directly or indirectly; and (3) the other person was conscious of the confinement or was harmed by it.'" *Allen v. Arizona Dept. of Corrections*, 2009 WL 2382026, at *4 (Az. Ct. App. Aug. 4, 2009) ("The essential element of false imprisonment is the direct restraint of personal liberty or the freedom of locomotion.") (quoting *Hart v. Seven Resorts, Inc*., 190 Ariz. 272, 281, 947 P.2d 846, 855 (Az. Ct. App. 1997); Restatement (Second) of Torts § 35 (1965)). "The restraint may be accomplished by physical force, by threats of force or intimidation or *by assertion of legal authority*." *Hunt ex rel. DeSombre v. State, Dept. of Safety and Homeland Sec., Div. of Delaware State Police*, 69 A.3d 360, 368 (Del. Supr. 2013) (citation omitted) (emphasis added).

Arizona Revised Statute ("A.R.S") § 13-1303(A) provides that "[a] person commits unlawful imprisonment by knowingly restraining another person." A.R.S § 13-1303(B) provides in relevant part as follows:

In any *prosecution for unlawful imprisonment*, it is a defense that:

1. The restraint was accomplished by a peace officer acting in good faith in the lawful performance of his duty; . . .

A.R.S § 13-1303(B)(1) (emphasis added) Defendants claim it is "[a] defense to the claim of false imprisonment . . . if the restraint was accomplished by a peace officer acting in good faith in the lawful performance of his duty."[5] (Doc. 143 at 10)  Defendants also contend that "[n]o arrest was made of any of the Plaintiffs and there are no facts evident to show that Plaintiffs could have reasonably believed they were detained and under arrest. . . [A]t no

---

[5] Defendants have not raised Arizona's justification statute, A.R.S. § 13-413, in their Motion *vis a vis* Plaintiffs' false arrest or imprisonment claim. The Court will not do so unilaterally.

time were Plaintiffs restrained, told they were under arrest, nor were they told they could not leave." (*Id.* at 11) Thus, Defendants argue, summary judgment should be granted on Plaintiffs' false imprisonment claim because "[n]o issue of material fact is present and no reasonable person would believe they were under arrest or detained by the officers." (*Id.*) The Court disagrees.

Arizona's unlawful imprisonment statute and cases relied upon by Defendants are unpersuasive because, by their own terms, they apply to a criminal "prosecution for unlawful imprisonment," not a common-law civil action for false arrest or imprisonment. Of course, federal district courts are bound by the decisions of the Arizona Supreme Court on pendent State law claims.[6] The parties, however, have not provided, nor has the Court's independent research discovered, any Arizona civil case that directly or indirectly addresses the liability of an Arizona peace officer for false arrest in a similar factual scenario. When a state's highest court has not squarely addressed an issue, district courts must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises and restatements for guidance. *See Glendale Assocs., Ltd. v. N.L.R.B.*, 347 F.3d 1145, 1154 (9th Cir. 2003); *Air-Sea Forwarders, Inc. v. Air Asia Co.*, 880 F.2d 176, 186 (9th Cir. 1989).

Claims for false arrest brought under § 1983 to vindicate the Fourth Amendment right to be free from unreasonable seizures, are "substantially the same" as claims for false arrest under state law. *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003).

Accepting Plaintiffs' facts as true, the Defendant police officers lacked probable cause or reasonable suspicion to detain the Plaintiffs for any crime up to seven hours after the shooting. Under such circumstances, the Defendant officers arguably lacked the lawful authority or legal justification to detain the Plaintiffs for as long as they did and under the circumstances presented by Plaintiffs. It is factually undebatable that the Defendant police

---

[6] Under 28 U.S.C. § 1367, federal courts may exercise supplemental jurisdiction over state-law claims linked to a claim based on federal law. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006)

officers intended to restrict Plaintiffs' freedom of movement after the shooting for a period of hours. *See Allen*, 2009 WL 2382026, at \*4. Whether the other elements of Plaintiffs' claims of false arrest, whether reasonable persons would believe that they were subjected to more than the temporary detention, and whether Plaintiffs' detentions were carried out in a reasonable manner and for a reasonable length of time are for a jury to decide.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment, doc. 143, is **GRANTED** in part and **DENIED** in part. Summary judgment is hereby granted on Plaintiffs' § 1983 claims of violations of their Fourteenth Amendment rights to procedural and substantive due process as either alleged in Count 5 or otherwise alleged in Plaintiffs' Second Amended Complaint. All other grounds for summary judgment is denied.

Dated this 15th day of January, 2014.

Lawrence O. Anderson
United States Magistrate Judge