**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gregory Martinez, Sr., etc.; et al, ) | No. CV-12-1837-PHX-LOA |
| Plaintiffs, ) | **ORDER** |
| vs. ) | |
| City of Avondale, etc; et al., ) | |
| Defendants. ) | |

On March 3, 2014, Plaintiffs Marisol and Gregory Martinez, Sr., the parents and court-appointed guardians *ad litem* of their two minor children, M.M., and L.M.,[1] filed a Petition to Approve Minors' Settlement. (Doc. 161) They request the Court's approval of their children's settlement and a "finding that the settlement in this case is equitable to all parties concerned and the attorneys' fees and costs are reasonable." (*Id*. at 2)  Defendants indicate they "do not object to Plaintiffs' Petition. Plaintiffs' counsel served his clients well and it was a pleasure to work with such an august attorney." (Doc. 162) All parties have consented to this Magistrate Judge pursuant to 28 U.S.C. § 636(c).

**I. Background**

This is a fatal police shooting lawsuit that arises out of a 9-1-1 call to the Avondale Police Department on October 28, 2011 by Plaintiff Marisol Martinez, requesting police

---

[1] When this action was removed to this District Court, Isaiah Martinez was also a minor. Because he is now an adult, the Court will use his full name in this Order. The Court identifies Plaintiffs' two minor children by their initials herein to protect their privacy interests. *See* Rule 5.2(a), Fed.R.Civ.P.

1 assistance with her 20-year old son, Gregory Martinez, Jr., now deceased. The Second
2 Amended Complaint names as defendants the City of Avondale ("City"), Officer Kevin
3 Sapp, and seven other Avondale police officers who allegedly unreasonably detained the
4 decedent's family members after the shooting. Plaintiffs acknowledge that the Martinez
5 parents are the only claimants alleging a wrongful death claim because the three Martinez
6 siblings do not have a viable wrongful death claim under Arizona law for the loss of their
7 brother. (Doc. 161 at 1) All Plaintiffs, including the two minor children, have alleged similar
8 Section 1983 and false arrest causes of action for the alleged post-shooting unlawful
9 detention of the Martinez family by the City's police. (*Id.*)

10 Marisol Martinez called 9-1-1 after her son had become violent within the family
11 home. Mrs. Martinez communicated to the 9-1-1 operator that her son was "on something,"
12 had just punched the wall, but he "didn't hit anybody." Officer Sapp was the first police
13 officer to arrive at the Martinez residence in response to the emergency call of a domestic
14 disturbance. Officer Sapp's mother was a ride-along passenger in his marked patrol vehicle
15 when he responded to the call.

16 The parties agree that the decedent was holding two kitchen knives when Officer Sapp
17 arrived and encountered him outside the residence on a public street, but disagree on what
18 the decedent did immediately thereafter until the shooting. As Officer Sapp exited his police
19 vehicle, he drew his firearm from its holster, and moved south on 117th Drive, into the
20 middle of the street away from his patrol car. Defendants contend Gregory Martinez, Jr.
21 ignored all commands to drop the two large kitchen knives and continued to advance upon
22 Officer Sapp with the knives drawn. When he was 10 to 15 feet away, Officer Sapp
23 discharged his duty weapon two times, killing Gregory.

24 Plaintiffs have alleged that, shortly after the shooting, additional police officers
25 arrived at the Martinez home. The officers immediately separated the Martinez family
26 members, and took away their cell phones. The family members, including the children,
27 were prohibited from speaking to, and comforting, each other during their separation and
28 leaving their residence and traveling to the hospital to see their son and brother. According

1 to Plaintiffs, his death was unknown to them for many hours after the shooting. Isaiah
2 Martinez testified that if any of them even spoke to another family member, "they'd arrest
3 us." After the City's police officers separated the children from their parents, M.M., age 15
4 at the time, wanted to comfort her mother, but a City police officer allegedly prohibited her
5 from doing so. ("[t]hey just separated us all, and I was just trying to run to my – to my mom.
6 She was next to me. They kept pushing me back. And I wanted – she was crying.") Mr.
7 Martinez asked a City police officer if he could hold his children, but his request was denied.
8 The officers took physical custody of the family's cell phones.  Mrs. Martinez requested her
9 cell phone be returned, so she could call the family's pastor, which was denied. Later, she
10 convinced a police officer to call the family's pastor on her behalf, which he did. Mrs.
11 Martinez also claims her request to use the bathroom was denied. While an officer was
12 guarding Mrs. Martinez – at approximately 7:00 p.m., over three hours after the shooting –
13 she asked to use the bathroom, but she was told she could not use the restroom at that time.
14 As the evening of the shooting progressed, Plaintiffs claim the officers ordered pizza
15 and Gatorade for themselves, but they did not offer any to the Martinez family until after the
16 officers had eaten. Isaiah Martinez does not recall ever being offered any food, water, or
17 anything to drink. Plaintiffs allege they were treated substantially different than other
18 witnesses, like Officer Sapp's mother.
19 On January 16, 2014, the Court granted Defendants' summary judgment motion on
20 Plaintiffs' § 1983 claims for violations of Plaintiffs' Fourteenth Amendment rights to
21 procedural and substantive due process alleged in the Second Amended Complaint. (Doc.
22 154) The Court, however, denied Defendants' summary judgment motion on Defendants'
23 claims of qualified immunity and found disputed issues of fact for jury resolution on
24 Plaintiffs' allegations of violations of their Fourth Amendment rights of use of excessive and
25 deadly force, unreasonable seizures and detentions after the shooting, and on their claims of
26 false arrest under Arizona law. Less than a month later, Plaintiffs filed a Notice of
27 Settlement. (Doc. 156)
28

**II. Legal Standard for Compromise of Minor's Claim**

"District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011). Federal Rule of Civil Procedure 17(c) provides, in pertinent part, that a district court "must appoint a guardian ad litem - or issue another appropriate order - to protect a minor or incompetent person who is unrepresented in an action." A district "court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem." *Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983). In accordance with this special duty regarding proposed settlements involving minor plaintiffs, a district court must "[c]onduct its own inquiry to determine whether the settlement serves the best interests of the minor." *Robidoux*, 638 F.3d at 1181 (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978) (internal citation marks omitted)). "While [a guardian *ad litem*] may negotiate a proposed compromise to be referred to the court, he cannot render such a compromise effective merely by giving his consent." *Dacanay*, 573 F.2d at 1079 (citations omitted). It is, however, the district "[c]ourt's order approving the settlement that vests the guardian ad litem with the legal power to enforce the agreement." *Id.* (citation omitted).

In *Robidoux*, the Ninth Circuit provided specific guidance "on how to conduct this independent inquiry." 638 F.3d at 1181. In cases involving the settlement of a minor's claims, "district courts should 'limit the scope of their review to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases,' and should 'evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty to safeguard.'" *R.J. ex rel. Jain v. Mitsubishi Motors North America, Inc.*, 2013 WL 2303784, at *1 (N.D. Cal. May 24, 2013) (quoting *Robidoux*, 638 F.3d at 1181-82 (citing *Dacanay*, 573 F.2d at 1078) (footnote omitted)); *see*

- 4 -

1  *also Reyes ex rel. Servin v. City of Pinole*, 2013 WL 3157902 (N.D. Cal. June 20, 2013)
2  (approving structured settlement of minor's action for civil-rights violations that resulted in
3  the death of minor's father caused by police use of excessive and unreasonable force).
4         While the Ninth Circuit noted that district courts have typically applied state law and
5  the local rules governing the award of attorney's fees to make the reasonableness and
6  fairness determination, the court held that "this approach places an undue emphasis on the
7  amount of attorney's fees provided for in a settlement, instead of focusing on the net
8  recovery of the minor plaintiffs under the proposed agreement." *Robidoux*, 638 F.3d at 1181-
9  82. Further, the fairness of each minor plaintiff's net recovery should be evaluated "without
10 regard to the proportion of the total settlement value designated for adult co-plaintiffs or
11 plaintiffs' counsel - whose interests the district court has no special duty to safeguard." *Id*.
12 at 1182 (finding "[t]he district court erred when it focused on the admittedly large proportion
13 of the total settlement value going to Plaintiffs' counsel, instead of reviewing the fairness of
14 each minor's net recovery in isolation.).

15 **III. Terms of the Compromise Settlement**

16        Defendants have tendered a global settlement offer to Plaintiffs of $750,000.00,
17 which includes payment of Plaintiffs' attorney's fees and costs. (Doc. 161 at 2) The
18 settlement is inclusive of all claims against all Defendants and is intended to resolve the
19 action in its entirety. If approved by the Court, Plaintiffs' counsel agrees to reduce his 40
20 percent written contingency fee agreement to 33 1/3 percent ($250,000.00) and recover his
21 costs advanced in the amount of $69,490.20. (*Id.*) Plaintiffs' counsel has attached to the
22 Petition, marked as Exhibits 1 and 2, an attorneys' fees affidavit and itemization of costs
23 advanced on behalf of Plaintiffs.

24        Plaintiffs' counsel proposes, and represents that his clients approve, the net recovery
25 of $430,509.80, after deducting fees and costs, be divided between the two main, but
26 separate, causes of action, the wrongful death of Gregory Martinez, Jr. and the unlawful
27 detention of the Martinez family. As is measured between these two, Plaintiffs' counsel
28 opines that the parents' wrongful death claim ($305,509.80) has more value than the

unlawful seizure claims ($125,000.00 or $25,000.00 net to each of the five Plaintiffs). In other words, Plaintiffs and their counsel propose the following disbursements from the gross settlement amount of :

| | |
|---|---|
| M.M., a minor, | $25,000.00 |
| L.M., a minor, | $25,000.00 |
| Isaiah Martinez, | $25,000.00 |
| Gregory Martinez, Sr., | $25,000.00 |
| Marisol Martinez, | $25,000.00 |
| Marisol and Gregory Martinez, Sr., | $305,509.80 |
| Robbins & Curtin, p.LLc. | $319,490.20 ($69,490.20 in costs advanced and $250,000.00 in attorney's fees). |

## IV. The Reasonableness and Fairness of the Settlement Amount

Here, the settlement agreement was reached after the conclusion of all discovery, and the Court finding that Plaintiffs have presented sufficient evidence to create a question of fact for jury resolution, and prior to setting the case for a jury trial. Additionally, there is little precedent in the Ninth Circuit, defining how long police may lawfully and reasonably detain witnesses, not accused or suspected of criminal activity, to conduct an investigation of a recent crime before such detention becomes an unconstitutional violation of the witnesses' Fourth Amendment rights. *See Walker v. City of Orem*, 451 F.3d 1139 (10th Cir. 2006) (finding qualified immunity applicable to police officers who detained decedent's family members in their home for questioning who did not consent to their detention, which lasted approximately one and one-half hours and prevented them from being with the decedent before he died). This relatively novel issue, the minors' only claim withstanding summary judgment,[2] may not have withstood appellate review if the minors were to obtain a favorable verdict.

---

[2] The minors' cause of action for the Arizona claim for false arrest and their § 1983 claim to vindicate their Fourth Amendment right to be free from unreasonable seizures are "substantially the same." *See Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003). "The Supreme Court of Arizona defined false arrest and imprisonment 'as the detention of a person without his consent and without lawful authority.'" *Mohajerin v. Pinal County*, 2007 WL 4358254, *4 (D. Ariz. Dec. 7, 2007) (quoting *Slade v. City of Phoenix*, 541 P.2d 550, 552 (Ariz. 1975)). "As a result, '[a] detention which occurs pursuant to legal authority . . . is not an unlawful detention.'" *Id*.

Importantly, the Court notes the two minor Plaintiffs did not sustain physical injury by the police, do not have a legal cause of action for the alleged wrongful death of their brother under Arizona law,[3] and were allegedly unlawfully detained after the shooting for no more than seven hours. The Court has not been provided any records or information the minors underwent any counseling and treatment for their alleged unlawful detention and, if they did, it would seem very difficult to separate any emotional or behavioral issues between the sudden, traumatic, and violent loss of their brother and their alleged unlawful detention.

The docket reflects the parties have taken dozens of depositions and engaged in significant discovery until the discovery deadline closed. Though he acknowledges he did not keep track of his time in his affidavit, Plaintiffs' counsel estimates that he expended approximately 270 hours on this action. (Doc. 161, ¶¶ 14, 17) Plaintiffs' counsel explains the risks he assumed in taking this case on a contingency fee arrangement. "[A] jury may empathize with the police officer, particularly in a situation where the decedent is armed (albeit with knives) and is under the influence of drugs (albeit sleeping pills) and has a criminal history." (*Id.*, ¶ 13) "The necessity of expensive experts to sort through the investigation of sometimes deceptive officers is another risk. Civil rights cases require a substantial amount of experience and knowledge of Federal practice and the myriad of legal issues involved in the claims, as well as the defenses, and the unique discovery." (*Id.*)

Considering the substantial experience of Plaintiffs' counsel in similar cases, the disputed and undisputed facts surrounding the shooting and alleged post-shooting detention claims, the numerous risks Plaintiffs' counsel assumed in taking this case, and the substantial costs he advanced to finance this action, the Court finds Plaintiffs' attorney's fees are reasonable, the division of the fees are fair amongst the five Plaintiffs, and the costs advanced by Plaintiffs' counsel were reasonable and necessary to properly prepare this

---

[3] In Arizona, a cause of action for wrongful death is purely statutory. Under the terms of Arizona's wrongful death act, such an action can only be brought in the names of the categories of persons specifically listed in A.R.S. § 12-612. *See Solomon v. Harman*, 107 Ariz. 426, 489 P.2d 236 (Ariz. 1971)

action for trial.

**V. Conclusion**

The Court finds the minors' net settlement amounts are fair and reasonable in light of the risks of further litigation, the undisputed facts and contested allegations, Plaintiffs' overall claims, and the Court's experience and recoveries in similar cases. The Court further finds the proposed settlement to be in the best interest of both minors. Accordingly, the Court will approve the proposed settlement and grant Plaintiffs Petition.

Based on the foregoing,

**IT IS ORDERED** as follows:

1. The proposed settlement between the minor Plaintiffs and Defendants is hereby **APPROVED** as fair and reasonable;

2. Plaintiffs' Petition to Approve Minors' Settlement, doc. 161, is **GRANTED**;

3. Minors M.M. and L.M. shall each receive $25,000.00 net after payment of all attorney's fees and costs approved herein;

4. Within 72 hours of receipt of a check or draft payable to the order of Marisol and Gregory Martinez, Sr., as guardians *ad litem* for and on behalf of the minor Plaintiffs M.M. and L.M., Plaintiffs' counsel shall deposit separate checks from his law firm's trust account in the amount of $25,000.00 each into separate, interest-bearing restricted accounts at a federally-insured bank or credit union located in Maricopa County, Arizona;

6. The separate settlement amounts plus interest shall be transferred to each minor Plaintiff when each reaches the age of 18 years or as otherwise ordered by the Maricopa County Superior Court. When each minor Plaintiff attains the age of 18 years, the respective depository, without further order of this District Court, is hereby authorized and directed to pay by cashier's check directly to the former minor Plaintiff, upon proper demand and identification, all money and interest deposited pursuant to this Order. The money on deposit is not subject to escheat;

7. Marisol and Gregory Martinez, Sr. and Plaintiffs' attorney shall deliver to the federally-insured bank or credit union a complete copy of this Order at the time of deposit;

8. The parties' must provide the Court with a stipulation for dismissal with prejudice and separate order no later than **May 9, 2014**, unless extended by the Court upon a showing of good cause.

Dated this 6th day of March, 2014.

Lawrence O. Anderson
United States Magistrate Judge